UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN VIDUREK, KIMBERLY VIDUREK,   :
TRADE WINDS INC., XYLEM CORP., and   :
CUSTOM BUILT,   :
             Plaintiffs,   :
   :
v.   :
   :
STEVEN T. MILLER, DOUGLAS SHULMAN,   :
ANN HAGEMEYER, NATALIE CASSADINE,   :
DENISE A. HUTCHINSON, IRS,   :
RHINEBECK SAVINGS BANK, BRADFORD   :
KENDALL, HUDSON VALLEY FEDERAL   :
CREDIT UNION, and ADRIAN H.   :
ANDERSON,   :
             Defendants.   :
------------------------------------------------------------x

|  |  |
|---|---|
|  | **MEMORANDUM DECISION** |
|  | 13 CV 4476 (VB) |

Briccetti, J.:

     Plaintiffs John Vidurek, Kimberly Vidurek, Trade Winds Inc., Xylem Corp., and Custom

Built (collectively, "plaintiffs"), proceeding pro se,[1] bring this action against defendants Steven

T. Miller, Douglas Shulman, Ann Hagemeyer, Natalie Cassadine, Denise A. Hutchinson, and the

Internal Revenue Service ("IRS") (collectively, the "Federal Defendants"); Bradford Kendall and

Adrian H. Anderson (collectively, the "County Defendants"); Rhinebeck Savings Bank ("RSB")

(together with the Federal Defendants and the County Defendants, the "Moving Defendants"),

and the Hudson Valley Federal Credit Union ("HVFCU"), arising out of assessments of and

attempts to collect federal income taxes from plaintiffs.

---

[1]     Plaintiffs Trade Winds Inc., Xylem Corp., and Custom Built appear to be corporate
entities, and no attorney has appeared on their behalf to date. The individual pro se plaintiffs may
not appear on behalf of these entities.  See Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir.
1997) ("[A]ppearance pro se denotes . . . appearance for one's self; so that a person ordinarily
may not appear pro se in the cause of another person or entity.  Thus it is well established that a
layperson may not represent a corporation.").

Plaintiffs assert claims for violations of various federal criminal statutes, specifically, conspiracy against civil rights (18 U.S.C. § 241), deprivation of civil rights under color of law (id. § 242), extortion by officers or employees of the United States (id. § 872), mail fraud (id. § 1341), making false statements (id. § 1001), the Racketeer Influenced and Corrupt Organizations Act ("RICO") (id. § 1961, et seq.),[2] and unlawful acts of revenue officers or agents (26 U.S.C. § 7214).

Plaintiffs bring constitutional claims for due process violations and unreasonable seizure pursuant to 42 U.S.C. § 1983, and for conspiracy to violate civil rights under 42 U.S.C. §§ 1985 and 1986.  Plaintiffs also appear to seek civil damages for unauthorized tax collection and for failure to release a lien.[3]

The Federal Defendants removed this action from Supreme Court, Dutchess County, on June 27, 2013, under 28 U.S.C. § 1442(a)(1).  Now pending are five motions: (i) RSB's motion to dismiss the complaint under Rules 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) (Doc. #7); (ii) the Federal Defendants' motion to dismiss the complaint under Rules 12(b)(1), 12(b)(5), and 12(b)(6) (Doc. #14); (iii) the County Defendants' motion for judgment on the pleadings under Rule 12(c) (Doc. #22); (iv) plaintiffs' motion to remand this action to state court; and (v) plaintiffs' motion for a default judgment against all defendants.

---

[2]     Congress has provided a civil cause of action under RICO, and plaintiffs' civil RICO claims are discussed infra.

[3]     Plaintiffs also seek to bring a claim under the Uniform Federal Lien Registration Act, a proposed uniform act prepared by the National Conference of Commissioners on Uniform State Laws, "which the various states are free to reject or adopt by action of the state legislature." Ridenbaugh v. Long, 246 F. Supp. 2d 849, 853 (S.D. Ohio 2002).  Reading plaintiffs' complaint liberally, as the Court must, see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam), the Court construes this claim as a Section 1983 due process claim against defendant Bradford Kendall, the Dutchess County Clerk.  (See Compl. ¶ 58 ("Uniform Code Federal Lien Registration Act requires that the filing of a lien must have a contract, a court hearing, and an order from court stating a valid levy was issued.  Anything contrary would be a violation of the people's due process, county clerk knows this.").

For the following reasons, RSB's motion to dismiss the complaint, the Federal Defendants' motion to dismiss the complaint, and the County Defendants' motion for judgment on the pleadings are GRANTED.  Plaintiffs' motions to remand and for a default judgment are DENIED.  Plaintiffs' claims against HVFCU are dismissed sua sponte.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For purposes of deciding the pending motions, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of plaintiff.  For purposes of addressing the Federal Defendants' arguments concerning the Court's subject matter jurisdiction, the Court does not draw argumentative inferences favorable to the party asserting jurisdiction, Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order), and may refer to evidence outside of the pleadings, Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

Plaintiffs assert they are not subject to federal tax assessment or collection by the IRS.[4] In support of this proposition, plaintiffs allege "the IRS is a foreign corporate trust created in [the] Philippines" and/or Puerto Rico, and the Internal Revenue Code "is not law," "only defines a contract between the IRS and an individual," and "applies only to the Philippines, Puerto Rico, District of Columbia, Virgin Islands, Guam, Northern Mariana Islands, territories, and insular

---

[4]     The complaint does not contain specific allegations relating to plaintiffs Kimberly Vidurek, Trade Winds Inc., Xylem Corp., or Custom Built, but plaintiffs do attach letters from the IRS to Trade Winds Unlimited, Inc., Xylem Corp., and Custom Built stating that the IRS is "attempting to collect unpaid taxes from you."  (Decl. of C. Connolly (Doc. #16) ("Connolly Decl."), Ex. A, 9).

possessions, for such items as narcotics, alcohol, tobacco, and firearms." (Compl. ¶¶ 28-29, 32, 40). Plaintiffs further allege the United States Tax Court is a "fiction." (Id., p. 15).

The following factual background is reflected in the complaint and documents attached as exhibits thereto, which the Court may consider in deciding the instant motions. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

On March 26, 2012, the IRS sent Vidurek[5] a "Proposed Individual Income Tax Assessment," which stated the IRS had no record of having received an individual tax return from Vidurek for the 2009 tax year and proposed an assessment in the amount of $119,012.13. On July 2, 2012, the IRS sent Vidurek a "Notice of Deficiency" in the amount of $81,413.00 for the 2009 tax year.

Vidurek responded by sending a "Notice and Demand" dated July 12, 2012, to defendant Ann Hagemeyer, an IRS employee, whose name appeared on both the Proposed Assessment and the Notice of Deficiency. Vidurek's Notice and Demand indicated that the Notice of Deficiency was an attempt to extort money from Vidurek by means of a "constructive fraud (ponzi scheme)" (Connolly Decl., Ex. A, 2A), "demanded that in good faith [the IRS] correct their files within 60 days," and "warned [the IRS] that plaintiff would redeem the damages owed" if the IRS "failed to satisfy the demand" by suing under various federal criminal and civil statutes. (Compl. ¶ 5).

By letter dated August 15, 2012, the IRS informed Vidurek it was reviewing his correspondence and would contact him within 45 days with a reply. Vidurek then received an IRS notice dated December 17, 2012, which stated he owed $124,762.43 for the 2009 tax year, which he was required to pay by January 2, 2013, to avoid additional penalty and interest

---

[5]      Kimberly Vidurek, John Vidurek's wife, is also a named plaintiff in this case. However, the Complaint lacks any allegations as to Kimberly Vidurek. Therefore, all references to "Vidurek" herein are references to John Vidurek.

charges.  In response, Vidurek sent a "Second Notice and Demand" to the IRS, Hagemeyer, and

defendant Steven T. Miller, former Acting IRS Commissioner, asserting he was not liable for the

assessed taxes because the Internal Revenue Code "is not the law" and there is no contract

between the IRS and Vidurek, again demanding the IRS correct their files, and again threatening

legal action.

The IRS sent Vidurek another notice, dated January 21, 2013, stating the amount Vidurek

owed was now $125,528.52, to which Vidurek responded by sending a letter and affidavit dated

January 25, 2013, stating he never received the $236,911.00 in reported taxable income that was

the basis of the Proposed Assessment.  The IRS then sent Vidurek a "Notice of intent to levy"

dated April 8, 2013, which indicated if Vidurek did not call the IRS or pay $127,136.99 by April

18, 2013, the IRS might levy any state tax refund to which Vidurek was entitled and take

possession of other property, the proceeds of which would be applied to the amount the IRS

stated Vidurek owed.  In response, Vidurek sent a "Fo[u]rth Notice to Correct Records" dated

April 10, 2013.

The IRS sent Vidurek a "Final Notice" of "Intent to Levy and Notice of Your Right to a

Hearing," dated April 15, 2013, signed by defendant Natalie Cassadine, an IRS employee.

Vidurek responded to Cassadine by letter dated April 22, 2013, asserting the IRS has no

authority to "act against" him and again demanding the IRS correct its records, and also sent

Cassadine a letter dated May 6, 2013, stating the IRS has "no authority to probe [his] personal

papers and property" or "seize [his] property without due process."  (Connolly Decl. Ex. A, 9A).

On May 7, 2013, the IRS sent Vidurek a "Notice of Federal Tax Lien Filing and Your

Right to a Hearing Under IRC 6320," which indicated a federal tax lien had been filed with the

Dutchess County Clerk in the amount of $124,762.43.

Plaintiffs allege the IRS subjected Vidurek to heightened scrutiny in connection with the above tax assessment and collection actions because Vidurek is a Tea Party organizer, and IRS agents "singled [him] out for political reasons, with intent to destroy [his] life without reason, court order, consent, jurisdiction, or authority."  (Compl. ¶¶ 1-3).

Plaintiffs further allege the IRS issued "illegal" summonses to plaintiffs' banks, defendants RSB and HVFCU, "demanding private [financial] information (property) without due process for a fishing expedition" (id. ¶ 24), and plaintiffs "never gave consent or jurisdiction to defendants to summons personal information, protected under the [Fourth] Amendment, from any financial institutions or any other third parties, in fact plaintiff forbad[e] them."  (Id. ¶ 26).

Finally, plaintiffs allege defendant Bradford Kendall, the Dutchess County Clerk, "became part of the criminal and civil conspiracy when a notice of lien was presented to [him]" and he "filed the notice of Lien as a valid lien."  (Id. ¶ 56).

## DISCUSSION

I.   Legal Standard

A.   Subject Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston, Hodgson, & CorteseCosta, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).  When, as here, the case is at the

pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Id.  "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)) (internal quotation marks omitted).  When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

　　　　B.　　Judgment on the Pleadings

　　　　At any time after the pleadings close and before trial commences, a party may move for judgment on the pleadings under Rule 12(c).  See Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC, 724 F. Supp. 2d 407, 414 (S.D.N.Y. 2010).  "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 520 (2d Cir. 2006).

　　　　C.　　Failure to State a Claim

　　　　The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not

entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court liberally construes submissions of a pro se litigant and interprets them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). Additionally, the Court applies the pleading rules permissively when a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).[6]

---

[6]      As discussed in the Court's Order dated September 9, 2013 (Doc. #36), plaintiffs' opposition to the instant motions was filed as exhibits to the Declaration of John W. Bailey, Esq., submitted in further support of RSB's motion to dismiss the complaint. Plaintiffs' opposition papers are contained in three exhibits: Exhibit A, a document titled "Answer to RBSB's Motion to Dismiss," Exhibit B, a document titled "Objection to this Procedure," and Exhibit C, which contains a notice of a "Motion for Default Judgment, and Answer to Motion for Summary Judgment" and an "Affidavit of John Vidurek." (Doc. #31). The Court cannot consider any new factual allegations in Vidurek's affidavit in deciding defendants' 12(b)(6) or 12(c) motions. See Wachtel v. Nat'l R.R. Passenger Corp., 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012). Nor can the Court consider a letter from the IRS to Vidurek that post-dates the complaint, because in ruling on a motion to dismiss or for judgment on the pleadings, a court may only consider the complaint, documents attached to the complaint or incorporated by reference in the complaint, matters of which judicial notice may be taken, and documents plaintiff relied on in drafting the

II.     The Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Federal Defendants move to dismiss for lack of subject matter jurisdiction on the

basis of sovereign immunity as to the IRS and the individual Federal Defendants in their official

capacities.

"Sovereign immunity is a jurisdictional bar," Lunney v. United States, 319 F.3d 550, 554

(2d Cir. 2003), and "[a]bsent a waiver, sovereign immunity shields the Federal Government and

its agencies from suit." Dorking Genetics v. United States, 76 F.3d 1261, 1263 (2d Cir. 1996)

(internal quotation marks omitted). Plaintiffs bear the burden to show Congress waived

sovereign immunity with respect to their claims. See United States v. Mitchell, 463 U.S. 206,

212 (1983); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Consent to suit must

be expressed unequivocally, with any ambiguity construed strictly in favor of the sovereign.

United States v. Nordic Vill., Inc., 503 U.S. 30, 33-34 (1992). "Because an action against a

federal agency or federal officers in their official capacities is essentially a suit against the

United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such

immunity is waived." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir.

1994).

To the extent plaintiffs assert claims under Bivens v. Six Unknown Named Agents of

Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971), against the IRS or the individual Federal

Defendants in their official capacities, such claims are barred by sovereign immunity and the

Court is thus without subject jurisdiction over them. See Robinson v. Overseas Military Sales

Corp., 21 F.3d at 510 (affirming dismissal of Bivens claims against federal agency and federal

officers in their official capacities for lack of subject matter jurisdiction on basis of sovereign

---

complaint. See Chambers v. Time Warner, Inc., 282 F.3d at 152-53. In any event, neither of
these documents, if considered, would provide additional support for plaintiffs' claims.

immunity); see also Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988) (per curiam) (construing

Section 1983 claim by pro se plaintiff as a Bivens claim as against federal defendants).

Moreover, plaintiffs have not shown their claims against the IRS and the Federal

Defendants in their official capacities, which exclusively relate to tax assessment and collection,

fall within any applicable waiver of sovereign immunity.  See Perry v. Wright, 2013 WL

950921, at *4 (S.D.N.Y. Mar. 8, 2013) ("If there is no statute expressly waiving the sovereign

immunity of the United States, the court lacks subject matter jurisdiction to adjudicate the

claim." (internal quotation marks omitted)).[7]

To the extent plaintiffs assert claims under the Federal Tort Claims Act ("FTCA"),

28 U.S.C. §§ 1346(b), 2671-80, the government's waiver of sovereign immunity under the

FTCA is not applicable to "[a]ny claim arising in respect of the assessment or collection of any

tax."  28 U.S.C. § 2680(c); see also Aetna Cas. & Sur. Co. v. United States, 71 F.3d 475, 477 (2d

Cir. 1995) (affirming dismissal of tax-related tort claim on basis of sovereign immunity and

28 U.S.C. § 2680(c)).

To the extent plaintiffs seek civil damages under the Internal Revenue Code for

unauthorized tax collection,[8] or for failure to release a lien,[9] plaintiffs have not pleaded any facts

concerning exhaustion of the administrative remedies available to them within the IRS.  The

---

[7]     Plaintiffs will be provided with copies of all unpublished opinions cited in this ruling.
See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[8]     See 26 U.S.C. § 7433(a) (providing, in relevant part, "[i]f, in connection with any
collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal
Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision
of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action
for damages against the United States in a district court of the United States").

[9]     See 26 U.S.C. § 7432(a) (providing, "[i]f any officer or employee of the Internal Revenue
Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on
property of the taxpayer, such taxpayer may bring a civil action for damages against the United
States in a district court of the United States").

Federal Defendants also submit an affidavit of Mary-Ellan Krcha, IRS Claims Manager, stating no administrative claims have been filed by plaintiffs arising out of any negligent acts of IRS employees.  Such administrative exhaustion is expressly required under both statutes.  See 26 U.S.C. §§ 7432(d)(1), 7433(d)(1).  Therefore, plaintiffs have not shown an applicable waiver of sovereign immunity under the Internal Revenue Code.  See Perry v. Wright, 2013 WL 950921, at *4-5.

Nor does the Administrative Procedure Act ("APA") provide a waiver applicable to plaintiffs' claims.  The APA provides "[a] person suffering legal wrong because of agency action, or adversely affected . . . by agency action" with "[a]n action in a court of the United States."  5 U.S.C. § 702.  However, agency action is only reviewable under the APA when "no other adequate remedy in a court" exists.  5 U.S.C. § 704.

Here, other adequate remedies were available to plaintiffs—namely, an Appeals hearing challenging plaintiffs' underlying tax liability under 26 U.S.C. §§ 6330(a), (c)(2)(B), and an appeal of that determination to United States Tax Court under 26 U.S.C. § 6330(d).  Thus, the APA does not provide a waiver of sovereign immunity with respect to plaintiffs' claims.  See Perry v. Wright, 2013 WL 950921, at *5.

The Court is thus without subject matter jurisdiction over plaintiffs' claims against the IRS and the individual Federal Defendants in their individual capacities.

Accordingly, those claims are dismissed.

III.    Criminal Claims

Plaintiffs assert claims for violations of various federal criminal statutes.  However, individuals "cannot bring suits as private attorneys general in an effort to right potential violations of criminal statutes."  Wright v. Waterside Plaza LLC, 2008 WL 872281, at *2

11

(S.D.N.Y. Apr. 2, 2008) (citing Chrysler Corp. v. Ash, 441 U.S. 281, 316 (1979)).  Therefore,

with the exception of RICO (addressed infra), plaintiffs cannot bring claims under the criminal

statutes they cite because these statutes do not provide for private rights of action.  See, e.g., id.

(no private right of action under 18 U.S.C. § 1341); Bender v. Gen. Servs. Admin., 2006 WL

988241, at *1 (S.D.N.Y. Apr. 14, 2006) (no private right of action under 18 U.S.C. §§ 241, 242

and 1001); Greenspan v. Work, 1991 WL 255373, at *5 n.2 (N.D.N.Y. Nov. 22, 1991) (no

private right of action under 18 U.S.C. § 872); Morton v. Granite, 1991 WL 33333, at *12-13

(S.D.N.Y. Mar. 5, 1991) (no private right of action under 26 U.S.C. § 7214); see also Andrews v.

Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007) (same).

        Moreover, plaintiffs provide no authority, and the Court is aware of none, supporting any

implied private rights of action under these statutes.  See Zahl v. Kosovsky, 2011 WL 779784, at

*10 (S.D.N.Y. Mar. 3, 2011) ("[I]n determining whether a criminal statute implies a private right

of action 'the "dispositive question" is whether Congress intended to create a private right of

action,' and courts 'are to be "especially reluctant" to imply a private right of action where the

statute explicitly provides a different remedy.'" (quoting Alaji Salahuddin v. Alaji, 232 F.3d 305,

308 (2d Cir. 2000))).  The Court declines to infer such rights.[10]

        Accordingly, plaintiffs' claims under 26 U.S.C. § 7214 and 18 U.S.C. §§ 241, 242, 872,

1341, and 1001 are dismissed as against the Moving Defendants.

---

[10]       Moreover, Section 1983 is not a means to assert violations of federal statutes.  See
Blessing v. Freestone, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983, . . . a
plaintiff must assert the violation of a federal right, not merely a violation of federal law.").

IV.    RICO

In contrast with the criminal statutes discussed above, Congress has created a private

right of action under RICO.  See 18 U.S.C. § 1964(c).  Nevertheless, plaintiffs have not plausibly

pleaded a civil RICO claim.

A.    Substantive RICO Claim

RICO Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Thus, to state a substantive RICO claim under Section 1962(c), a plaintiff

must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

Sedima v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted).

Plaintiffs have failed to state a claim under RICO because, inter alia, they have not

plausibly alleged an enterprise.

"A RICO enterprise may be a lawful entity or an association-in-fact."  Kalimantano

GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013).  Construing the

complaint liberally, plaintiffs appear to allege an "association-in-fact" enterprise consisting of

the various named defendants.[11]

---

[11]    To the extent plaintiffs seek to plead an enterprise consisting of the IRS as a "lawful
entity," plaintiffs' RICO claim fails because "the defendant and the enterprise must be distinct."
Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d at 405 ("To establish liability
under § 1962(c), [the plaintiff] must allege and prove the existence of two distinct entities; (1) a
'person' [,] and (2) an 'enterprise' that is not simply the same 'person' referred to by a different
name." (quoting Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001))).  Nor can
plaintiffs state a RICO claim on the basis of an enterprise consisting of the IRS and its agents.
See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir.
1994) ("[W]here employees of a corporation associate together to commit a pattern of predicate

"[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004) (internal quotation marks omitted).  To withstand a Rule 12(b)(6) motion, a plaintiff must "explain each participant's role in the alleged course of fraudulent or illegal conduct" to show the enterprise members "functioned as a unit." Id. at 174-75 (emphasis added).

Here, the complaint lacks specific allegations about the roles of RSB, HVFCU, or the County Defendants in the alleged scheme to target Vidurek for heightened tax scrutiny, other than the allegation that Kendall, the County Clerk, filed a notice of the federal tax lien "as a valid lien," and that RSB and/or HVFCU may have "cooperated" with the IRS by complying with the IRS summonses.  Plaintiffs have not alleged any facts whatsoever articulating how the purported enterprise members functioned as a unit to expose Vidurek to heightened scrutiny with respect to his taxes.  Plaintiffs' "conclusory naming" of a list of entities and individuals does not plausibly allege an enterprise.  See id. at 175 (internal quotation marks omitted).

Accordingly, plaintiffs' substantive RICO claim is dismissed as against the Moving Defendants.

    B.    <u>RICO Conspiracy Claim</u>

To the extent plaintiffs seek to state a claim for conspiracy to violate RICO, because plaintiffs have failed to state a substantive RICO claim, any conspiracy claim necessarily fails as well.  First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

---

acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.").

Plaintiffs' RICO conspiracy claim is therefore dismissed as against the Moving

Defendants.

V.      Constitutional Claims

Reading the complaint liberally, as the Court must, see Triestman v. Fed. Bureau of

Prisons, 470 F.3d at 474, plaintiffs appear to bring claims for procedural and/or substantive due

process violations and for unlawful seizure under the Fourth Amendment.[12]  Plaintiffs also bring

conspiracy claims under Sections 1985 and 1986.

A.      Procedural Due Process

To state a procedural due process claim, plaintiffs must allege they possessed a protected

liberty or property interest and were deprived of that interest without due process.  McMenemy

v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001).  Although exhaustion of

administrative remedies is not generally required to state a claim under Section 1983, "[w]hen

§ 1983 claims allege procedural due process violations," courts assess the availability of such

remedies, "because that inquiry goes to whether a constitutional violation has occurred at all."

Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 153 (2d Cir. 2010).  "[A]

procedural due process violation cannot have occurred when the governmental actor provides

apparently adequate procedural remedies and the plaintiff has not availed himself of those

remedies."  New York State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 169 (2d Cir. 2001)

(emphasis added) (internal quotation marks omitted).

Here, plaintiffs have not alleged they made any attempt to avail themselves of any

procedural remedies that were plainly available to them, including: (i) appeals of the IRS's initial

---

[12]     The Court construes plaintiffs' constitutional claims, brought pursuant to Section 1983,
as Bivens claims as against the Federal Defendants.  See Daloia v. Rose, 849 F.2d 74, 75 (2d Cir.
1988).

tax assessment, the IRS's determination of a tax deficiency (in United States Tax Court), or the

IRS's notice of its intent to levy; and (ii) a request for a hearing after the IRS filed a Notice of

Federal Tax Lien against Vidurek with the Dutchess County Clerk under 26 U.S.C. § 6320.[13]

Therefore, plaintiffs have not stated a claim for violation of procedural due process.

Accordingly, plaintiffs' procedural due process claim is dismissed as against the Moving

Defendants.

B.      Substantive Due Process

"[T]he substantive component of the Fourteenth Amendment's Due Process Clause

forbids the government from burdening, in a constitutionally arbitrary way, an individual's

property rights." O'Connor v. Pierson, 426 F.3d 187, 204 (2d Cir. 2005). "Substantive due

process is an outer limit on the legitimacy of governmental action," Natale v. Town of

Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999), which "protects against government action that is

arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against a

government action that is incorrect or ill-advised." Kaluczky v. City of White Plains, 57 F.3d

202, 211 (2d Cir. 1995) (internal quotation marks omitted). To succeed on their substantive

process claim, plaintiffs must show they had a valid property interest, and defendants infringed

on that interest in a constitutionally arbitrary manner. See O'Connor v. Pierson, 426 F.3d at 204;

Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001).

"'[C]onstitutionally arbitrary' action for purposes of a property-based substantive due

process claim is action that shocks the conscience." O'Connor v. Pierson, 426 F.3d at 204. "In

---

[13]     In the notices he received from the IRS, attached to plaintiffs' complaint, Vidurek was specifically advised of his right to appeal the Proposed Assessment, his right to contest the deficiency determination in United States Tax Court, his right to request an Appeals hearing of the IRS's intent to levy, and his right to appeal the collection action after the federal tax lien was filed. (See Connolly Decl., Ex. A, 1, 2, 7, & 10).

order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity."  Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks omitted).

Assuming, for the purpose of deciding the instant motions, that defendants infringed on a valid property interest by "singling out" Vidurek for heightened tax scrutiny, plaintiffs have not plausibly alleged defendants did so in a constitutionally arbitrary or irrational manner that shocks the conscience.  Plaintiffs merely allege, in a conclusory fashion, that Vidurek was targeted by the IRS "for political reasons with intent to destroy [his] life without reason, court order, consent, jurisdiction, or authority."  Such conclusory allegations are not entitled to the assumption of truth.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Accordingly, plaintiffs' substantive due process claim is dismissed as against the Moving Defendants.

C.    Unlawful Seizure

"[T]he first step in any Fourth Amendment claim . . . is to determine whether there has been a constitutionally cognizable seizure."  Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998).  Here, plaintiffs have alleged no facts supporting an inference of a constitutionally cognizable seizure.  Plaintiffs appear to assert a Fourth Amendment violation based on an alleged unlawful seizure of Vidurek's financial information by means of third-party summonses issued by the IRS to RSB and HVFCU, plaintiffs' financial institutions.

Because such documents "have already been exposed to a third party, petitioners have no reasonable expectation of privacy, and, consequently, no Fourth Amendment objection to production of the documents."  Muratore v. Dep't of Treasury, 315 F. Supp. 2d 305, 310

(W.D.N.Y. 2004) (citing e.g., S.E.C. v. O'Brien, 467 U.S. 735, 743 (1984)). Moreover, because

"a corporation has no . . . right to privacy," id. (quoting Browning-Ferris Indus. of Vt., Inc. v.

Kelco Disposal, Inc., 492 U.S. 257, 284 (1989)), any demand for the corporate plaintiffs'

documents could not violate the Fourth Amendment.

Accordingly, plaintiffs' unlawful seizure claim is dismissed as against the Moving

Defendants.

D.      Conspiracy

Section 1985 prohibits conspiracies to interfere with civil rights. Plaintiffs appear to

assert their claim under Section 1985(3). To state a conspiracy claim under Section 1985(3),

plaintiffs must allege "(1) a conspiracy, (2) for the purpose of depriving any person or class of

persons of the equal protection of the laws or of equal privileges and immunities under the laws,

(3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or

property or deprived of a right or privilege of a citizen." Iqbal v. Hasty, 490 F.3d 143, 176 (2d

Cir. 2007), rev'd on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009). To state a claim

under Section 1985(3), plaintiffs must also allege the conspiracy was motivated by some racial

or other class-based animus. See id.; Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir.

1994) ("To recover under section 1985(3), a plaintiff must allege some racial, or perhaps

otherwise class-based, invidiously discriminatory animus behind the conspirators' action."

(internal quotation marks omitted)).

Plaintiffs have failed plausibly to plead the alleged conspiracy was motivated by racial or

other class-based animus.

Plaintiffs allege that on May 10, 2013, "the news reported that the IRS apologized for

flagging Tea Party groups for a higher level of scrutiny than other organizations during the 2012

18

election." (Compl. ¶ 1). Plaintiffs allege Vidurek was "a target of the aforesaid scrutiny" and was subjected to "vindictive action" because he is "a tea party organizer." (Id. ¶ 2). Vidurek alleges he "believes that IRS agents have singled [him] out for political reasons with intent to destroy [his] life without reason, court order, consent, jurisdiction, or authority." (Id. ¶ 3).

Although the Second Circuit has held political parties are protected groups under Section 1985 in Keating v. Carey, 706 F.2d 377, 386-87 (2d Cir. 1983), the Supreme Court later "suggested that the scope of section 1985 might not extend to include discrimination against political groups except where that discrimination was based on racial animus." Gleason v. McBride, 869 F.2d 688, 695 (2d Cir. 1989) (citing United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 836-37 (1983)). Thus, some district courts in this Circuit have since concluded that political affiliation alone does not constitute a protected "class" under Section 1985. See, e.g., Fulani v. McAuliffe, 2005 WL 2276881, at *6 (S.D.N.Y. Sept. 19, 2005) (concluding the Second Circuit "does not recognize political affiliations for purposes of class membership under § 1985" and holding plaintiffs therefore failed to state a Section 1985 claim).

Even assuming, arguendo, that membership in the Tea Party constitutes membership in a protected group under Section 1985, plaintiffs nevertheless plead no facts whatsoever in support of their bald assertions of animus on the basis of that affiliation, and conclusory allegations are not entitled to the assumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Therefore, plaintiffs have not plausibly pleaded a Section 1985 claim.

Having failed to plead a claim under Section 1985, plaintiffs' Section 1986 claim necessarily fails as well. See, e.g., Graaf v. N. Shore Univ. Hosp., 1 F. Supp. 2d 318, 323

(S.D.N.Y. 1998) ("Absent a § 1985 claim, a plaintiff cannot bring a § 1986 claim in this circuit." (citing Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996)).

Accordingly, plaintiffs' conspiracy claims are dismissed as against the Moving Defendants.

VI.     Internal Revenue Code Claims

Although plaintiffs do not expressly rely on these statutes in their complaint, liberally construed, plaintiffs seek civil damages under the Internal Revenue Code for unauthorized tax collection and for failure to release a lien.  See 26 U.S.C. §§ 7432(a), 7433(a).  However, as discussed supra, plaintiffs have not pleaded any facts concerning exhaustion of their administrative remedies.  Such administrative exhaustion is expressly required under both statutes.  See 26 U.S.C. §§ 7432(d)(1), 7433(d)(1).

Accordingly, plaintiffs' claims under 26 U.S.C. §§ 7432(a) and 7433(a) are dismissed as against the Moving Defendants.

VII.    Leave to Replead

A district court ordinarily should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).  Here, however, reading the complaint liberally, the Court does not find any allegations that suggest plaintiffs have a valid claim they have merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe."  Id.  On the contrary, the Court finds that repleading would be futile, because the problems with plaintiffs' causes of action are substantive,

and supplementary and/or improved pleading will not cure the deficiencies of the complaint.  See id.

Accordingly, the Court declines to grant plaintiffs leave to amend their complaint.

VIII.  Plaintiffs' Motion to Remand

In their opposition papers, plaintiffs assert that "coun[sel] for the defense illegally hijacked the plaintiffs['] case under the guise of necessity to a federal court claiming that this is a federal jurisdiction," and argue the case should be remanded to state court because the Court lacks subject matter jurisdiction.  The Court construes plaintiffs' assertion as a motion to remand this case to state court.

In reply, the Federal Defendants argue the case was properly removed.

As the Court previously determined in denying plaintiffs' motion for Rule 11 sanctions, this case was properly removed from Supreme Court, Dutchess County.  At a conference held on August 5, 2013, the Court denied plaintiffs' motion for Rule 11 sanctions, which was based on the removal, against the Assistant United States Attorney representing the Federal Defendants.  (See Doc. #20).  In support of their motion for sanctions, plaintiffs argued: (i) the notice of removal wrongly contended the IRS is a government agency; (ii) defendants allegedly "acquiesced to plaintiffs['] enforcement process and venue" by ignoring plaintiffs' notices; and (iii) defendants removed to the United States District Court for the Southern District of New York, rather than "the district court of the United States."  The Court rejected all three of these arguments on the record and concluded the action was properly removed.

For the reasons stated on the record at the August 5, 2013, conference, removal of this action was proper under 28 U.S.C. § 1442(a)(1), which provides for removal of a civil action from state court "to the district court of the United States for the district and division" where the

21

action is pending by the United States and any United States agency, officer, or person "acting under" such an officer, "for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for . . . the collection of the revenue."[14]

Accordingly, plaintiffs' motion to remand is denied.

IX.    <u>Plaintiffs' Motion for Default</u>

Plaintiffs informally move for default on the apparent basis that defendants "failed to answer the complaint in an affidavit under penalties of perjury."  Plaintiffs misapprehend the relevant procedural rules.

"[M]otions for default judgments will be denied where a party appears to defend unless it is clear that under no circumstances could the defense succeed."  <u>Guangxi Nanning Baiyang Food Co. v. Long River Int'l, Inc.</u>, 2010 WL 1257573, at *3 (S.D.N.Y. Mar. 30, 2010) (internal quotation marks omitted).

The Federal Defendants, RSB, and the County Defendants are not in default, because they have plainly defended this action by making the instant motions to dismiss and for judgment on the pleadings, submitting briefs in accordance with the Court's scheduling Orders.

HVFCU has not appeared in this action.  However, a motion for a default judgment must be made in compliance with Rule 55(b) of the Federal Rules of Civil Procedure, Local Civil Rule 55.2, and this Court's Individual Rules.  Plaintiffs have not submitted <u>any</u> of the materials required under these rules, which include a certificate of default issued by the Clerk of Court and a proposed judgment of default, and "<u>pro se</u> status does not exempt a party from compliance with

---

[14]    Removal was also timely, because the case was removed on June 27, 2013, which was within thirty days after it was filed in state court on May 28, 2013.  <u>See</u> 28 U.S.C. § 1446(b).

relevant rules of procedural and substantive law." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d at 477 (internal quotation marks omitted).  Therefore, plaintiffs' informal motion for a default judgment as against HVFCU is denied for failure to make any attempt to comply with applicable procedural rules.  Moreover, as set forth below, plaintiffs' claims against HVFCU are frivolous.

Accordingly, plaintiffs' motion for a default judgment is denied as against all defendants.[15]

X.     <u>Plaintiffs' Claims Against HVFCU</u>

In their opposition papers, plaintiffs submitted what purports to be proof of service of the summons and complaint on all defendants, including HVFCU.  (Doc. #31-1, p. 7).

Even though HVFCU has not appeared as of this date, the Court has the inherent authority to dismiss frivolous claims <u>sua sponte</u>, even when the filing fee was paid—as it was here when the case was removed.  <u>See Fitzgerald v. First East Seventh Tenants Corp.</u>, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) ("[D]istrict courts may dismiss a frivolous complaint <u>sua sponte</u> even when the plaintiff has paid the required filing fee.").

A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." <u>Livingston v. Adirondack Beverage Co.</u>, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted).  Construing plaintiffs' <u>pro se</u> pleadings liberally, <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009), and interpreting them to raise the "strongest [claims] that they suggest," <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d at

---

[15]     In their opposition papers, plaintiffs also appear to move for Rule 11 sanctions, this time against "the Attorney General," presumably of the United States, for "doing an end run around the [C]onstitution."  The Court previously warned Vidurek at the August 5, 2013, conference not to make frivolous or plainly baseless motions.  Therefore, to the extent plaintiffs so move, the motion is denied as patently frivolous.

474-75, plaintiffs' claims against HVFCU are frivolous, for the same reasons that all of the substantive claims addressed herein are factually baseless and without merit.

Accordingly, the Court dismisses plaintiffs' claims against HVFCU <u>sua</u> <u>sponte</u>.

XI.   <u>State Law Claims</u>

Having dismissed all federal question claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims.  28 U.S.C. § 1367(c)(3).

<b><u>CONCLUSION</u></b>

Defendant RSB's motion to dismiss the complaint is GRANTED, the Federal Defendants' motion to dismiss the complaint is GRANTED, and the County Defendants' motion for judgment on the pleadings is GRANTED.

Plaintiffs' claims against HVFCU are DISMISSED.

Plaintiffs' motion to remand and motion for a default judgment are DENIED.

The Clerk is directed to terminate the motions (Docs. ##7, 14, and 22) and close this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is denied for the purpose of an appeal.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

Dated: February 27, 2014
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge